# Edward Warren Jackson, Sr.

## v.

# Earline S. Jackson

Record No. 860013

September 23, 1988

Present: All the Justices

*R. Lecky Stone, Jr. (Robert P. Dwoskin; Wood and Stone*, on brief), for appellant.

*J. Barrett Jones* for appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal arises from a malicious prosecution suit filed by Earline S. Jackson against her ex-husband Edward Warren Jackson, Sr. The trial court entered a default judgment against Edward. ·At the conclusion of a hearing limited to the question of damages, the trial court awarded Earline $10,000 in compensatory damages and $10,000 in punitive damages. On appeal, Edward contends first that the trial court should not have entered a default judgment against him. Next, he contends that the damage awards were improper. Finally, he contends that this Court should consider and reject Earline's malicious prosecution claims on the

merits. The only issue properly before the Court is whether a default judgment should have been granted.*

The pertinent facts are as follows: After an acrimonious divorce, Edward resided in the former marital home which was then owned by Edward and Earline as tenants in common. On August 8, 1981, someone broke into the house. Seven months later, on March 4, 1982, Edward — who had weeks earlier lost a battle over the custody of the couple's two children — swore out a warrant against Earline charging that she was the person who broke and entered the house in August 1981. Earline, who never before had been arrested, was arrested on a Sunday morning in the presence of neighbors and fellow church members. While under arrest she was photographed, fingerprinted, jailed for four and one-half hours, and made to post a $1,000 bond. Earline retained counsel, to whom she paid a $500 fee. The matter was nolle prossed by order dated April 25, 1982.

Thereafter, in June 1983, Edward again caused Earline to be arrested. This time he swore out a warrant claiming that she was in his house destroying personal property. In fact, she was cleaning the house because she had no other place to live and because she thought that as a result of a certain juvenile and domestic relations court proceeding shortly before June 2, 1983, she had been given permission to move in. Three sheriff's cars with sirens on and lights flashing came to the house. Earline was arrested in the presence of her mother, her brother, and other individuals who were helping to clean. Edward and his second wife also were present along with fifteen to twenty neighbors who gathered after seeing and hearing the sheriff's cars. Earline again was taken to jail, photographed, fingerprinted, and processed. This time, she remained in jail two or three hours waiting for a magistrate to set bond. After a hearing on the merits, the charge was dismissed.

Earline was arrested for a third time on July 7, 1983. This time Edward had secured a warrant by alleging that Earline had threatened their minor daughter by telling her she would go to jail if she did not pay a $14 fine for an overdue library book. Earline

---

* The latter two claims are not properly before the Court. Because of the default judgment, the trial court did not consider the merits of Earline's malicious prosecution claims. We will not consider these matters for the first time on appeal. Further, Edward's counsel did not object to the final order. As a result, Edward did not preserve the right to appeal the damage awards.

was taken to the jail and processed. This third charge was dismissed on the ground that it did not allege a criminal offense.

On April 29, 1983, subsequent to the first arrest, but prior to the other arrests, Earline, acting *pro se*, filed a warrant in debt against Edward demanding $7,000 for medical expenses and malicious prosecution. Edward retained counsel who, in May 1983, removed the matter to circuit court pursuant to Code § 16.1-92. As part of the removal process, Edward, by counsel, filed an affidavit of substantial defense in which he maintained that he had "probable cause to obtain the warrant issued" against Earline and that he was "not liable for plaintiff's medical expenses."

The suit apparently remained dormant from May 1983 until January 3, 1984. On that date Earline, who had retained counsel, filed a "Motion for Leave To Amend Civil Warrant With Motion for Judgment." In her motion, Earline's counsel stated that he sought to clarify the issues, add claims that had arisen since the warrant in debt was filed, and increase the *ad damnum*. Earline's counsel also contended that because Edward had not yet filed responsive pleadings, he would not be prejudiced if the trial court permitted the filing of the motion for judgment.

By order dated January 4, 1984, the trial court granted Earline's motion. The order provided as follows: "It is hereby ORDERED that the plaintiff have leave to file the motion for judgment presented herewith, and that the said motion for judgment is hereby filed." The trial court, in its own hand, added at the bottom of the Order the following language: "Process shall be served on the Defendant as if this were original action in this Court and a copy of this Order mailed to counsel of record. Defendant shall file his responsive pleadings to the motion for judgment according to applicable Rules of Court."

On January 12, 1984, at the trial court's direction, the motion for judgment along with a notice of motion for judgment were personally served on Edward. The face of the notice of motion for judgment contained this statement: "You are hereby notified that unless within twenty-one (21) days after service of this Notice of Motion for Judgment on you, response is made by filing in the Clerk's office of this court a pleading in writing, in proper legal form, judgment may be entered against you by default." Because Edward was personally served on January 12, 1984, his response was due by February 2, 1984. It was not filed on that date nor has one ever been proffered.

On January 12, 1984, when Edward was served with the notice of motion for judgment and the motion for judgment, he was also served with interrogatories, requests for production of documents, and requests for admissions. Pursuant to the discovery rules, Edward had twenty-eight days from the service of the motion for judgment in which to respond to the discovery requests. The discovery responses were due by February 9, 1984. Edward did not respond until February 13, 1984.

On April 12, 1984, more than two months after Edward's response to the motion for judgment was due, Earline filed a motion for default judgment. On November 21, 1984, Earline's counsel sent notice to Edward of a November 27, 1984 hearing on the motion for default judgment. As of the November 27, 1984 hearing, Edward had not proffered a response, requested a late filing, or sought to explain his failure to answer the motion for judgment. By order dated November 27, 1984, the trial court found Edward in default and ruled further "that all issues of liability presented in the said motion for judgment be, and they hereby are, resolved against the defendant and in favor of the plaintiff."

A hearing on damages was held on October 7, 1985, almost a year from the default judgment order. At no time during that interval did Edward move to set the default judgment aside, proffer a response, or attempt to explain the default. The only mention made of the default judgment from November 27, 1984, until October 7, 1985, occurred on the morning of the damage hearing, when Edward's counsel made an oral motion to vacate the default judgment on the ground that Edward's answers to interrogatories met the requirements of Rule 3:5, and were in fact responsive pleadings on Edward's behalf. The trial court denied the motion.

Edward advances two main arguments against the default judgment. First, he contends that the affidavit of substantial defense filed as part of the process of removing the case from general district court to circuit court constituted a responsive pleading as far as Count I of the Motion for Judgment is concerned. According to Edward, Count I embodied the same claim originally contained in the warrant in debt. He argues further that he is not in default as to Count I of the motion for judgment because he stated in his affidavit of substantial defense that he had had probable cause to secure the first warrant for Earline's arrest. According to Edward, the assertion of probable cause was sufficient to join issue with regard to Count I because probable cause is a complete defense to

a claim of malicious prosecution. Based on Edward's reasoning, he was not required to respond to the specific factual allegations contained in Count I. Edward contends that he can rely on the affidavit of substantial defense as a responsive pleading because the motion for judgment was an amendment of the civil warrant and, thus, Rule 3:7 permits his reliance on pleadings previously filed.

Edward is incorrect for several reasons. First, an affidavit of substantial defense is not a pleading. It is a statutorily mandated filing, the purpose of which is to insure that meritorious cases are not removed from general district to circuit court solely to harass or delay. It is a mechanism which allows the courts to monitor frivolous defenses and to prevent abuse of the removal procedures. Because an affidavit of substantial defense is not a pleading, Rule 3:7 does not permit Edward's reliance upon it.

Moreover, there was no amended motion for judgment in this case. There was a warrant in debt which was substituted by a motion for judgment. There was never a motion for judgment which was amended. Thus, Rule 3:7 has no application to this appeal whatever.

One reason Edward places so much emphasis upon Rule 3:7 is his contention that the rule requires the trial court to fix the time in which the defendant shall file his responsive pleadings. Edward argues that Rule 3:7 was violated because no time was ever set and thus, even now, he cannot be said to be late in responding to the motion for judgment, even though it was served on him on January 12, 1984. In advancing this argument, Edward overlooks the obvious: the time in which he was to respond to the motion for judgment was fixed in the notice of motion for judgment which was served on him at the express direction of the trial judge.

Edward advances another equally novel argument to establish that he is not in default. He contends that his answers to interrogatories set forth his defense and amounted to a responsive pleading. We reject this argument because discovery responses and defensive pleadings are not the same; they serve different purposes; one cannot be substituted for the other.

Edward and his counsel acted in wholesale disregard of the rules of this Court. Edward ignored the notice of motion for judgment; he never proffered a response; he never sought a late filing; he never sought to explain his delay or his default.

In *Levine* v. *Lacy*, 204 Va. 297, 130 S.E.2d 443 (1963), we were asked to set aside a default judgment; we refused. We

pointed out that the Rules of Court concerning default judgments

> were adopted in the interest of expediting the maturing and hearing of cases. A defendant is warned when he is served with process as to the time within which he must make his response. He may have an extension of that time if he makes proper application and shows reasonable cause therefor. Otherwise the Rules are to be applied according to their terms.

*Id.* at 302, 130 S.E.2d at 447. In *Landcraft Co.* v. *Kincaid*, 220 Va. 865, 263 S.E.2d 419 (1980), we held that the trial court improperly set aside a default judgment; we reversed and entered final judgment. In *Kincaid*, we said the defendant had been the architect of his own misfortune, then we made clear that the Rules concerning default are aimed at encouraging diligence. We wrote that "[t]o relieve a defendant of the consequences of such conduct would be to encourage it. Diligence and vigilance would cease to be the rule; certainty in the result of judicial proceedings would be destroyed. . . ." 220 Va. at 874, 263 S.E.2d at 425.

When Edward failed to respond to the motion for judgment within twenty-one days, he was in default. *See* Rules 3:5 and 3:17. We hold that the trial court did not err in so declaring. For all the foregoing reasons, the judgment of the trial court will be affirmed.

*Affirmed.*